*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JULIANO DAMON SPIVEY,

       Defendant-Appellant.

UNPUBLISHED
June 27, 2024

No. 364253
Genesee Circuit Court
LC No. 2021-047628-FC

Before: MARKEY, P.J., and SWARTZLE and MARIANI, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of two counts of assault with intent to commit murder (AWIM), MCL 750.83, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 171 months' to 25 years' imprisonment for each of his AWIM convictions and two years' imprisonment for each of his felony-firearm convictions. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Defendant was in a dating relationship with Natiya Hicks before it ended in November 2020. Hicks then began dating Rashamere Holmes, who is the father of her child. On December 11, 2020, Holmes and Hicks drove together to pick up their child at the apartment of Hicks's stepfather. Holmes's four-year-old cousin, JJ, was in the backseat directly behind Holmes, who was driving Hicks's Ford Taurus. Before they arrived at the apartment complex, defendant pulled into the complex and backed into a spot near Hicks's stepfather's apartment. Shortly afterward, Holmes drove the Taurus into the parking lot and pulled into a parking spot across the lot from defendant's vehicle. Hicks got out of the car to go inside.

When out of her car, defendant called out to Hicks. She recognized defendant's face and voice, but she did not respond. Hicks testified that defendant was wearing a white hooded sweatshirt with the word "Champion" written across the front. Although not entirely clear, parking-lot surveillance footage appeared to show that this was the clothing worn by the shooter. Hicks ignored defendant and went inside the apartment building to retrieve her son. Defendant then began walking toward the Taurus and raised the hood of his sweatshirt. He surreptitiously

-1-

walked to the right of the Taurus, around one or two other vehicles parked next to it. Defendant then doubled back, walking on the sidewalk in front of the Taurus. In a matter of seconds, he approached the driver's side window and fired a gun into the vehicle. A bullet struck Holmes, though he survived. Holmes testified to his belief that defendant stopped shooting because his gun jammed, at which point Holmes sped off and drove to the hospital. JJ was physically unharmed.

Defendant fled from the scene. Holmes, who knew defendant, identified defendant as the shooter.[1] Hicks identified defendant to the police and provided them with his Facebook profile and cellphone number. After she heard the shooting and went outside, Hicks saw defendant running, then walking, out of the parking lot and away from where her car had been parked. Hicks told the police that she heard someone ask defendant why he shot Holmes, and defendant responded, "f**k that, he got me f**ked up. I'll do it again." Hicks also showed the police a photograph of defendant wearing the hooded sweatshirt that he wore on the night of the shooting. Hicks did not witness the actual shooting.[2]

Defendant's cellphone was tracked to Illinois and Wisconsin before ultimately returning to Michigan. Defendant was arrested on January 4, 2021. He gave police conflicting accounts with respect to his whereabouts at the time of the shooting, and he lied about his familiarity with the apartment complex where the shooting occurred.[3] Defendant consistently denied that he was at the apartment complex at the time of the shooting and that he was the shooter. At trial, the defense theory was that someone other than defendant committed the shooting. The gun used in the shooting was never found, nor were any fired bullets recovered. Doctors never removed the bullet lodged in Holmes. There were several shell casings found at the scene, but police could not definitively link the casings to the shooting.

---

[1] Although Holmes identified defendant as the shooter at trial, he originally told the police after the shooting that he did not know who shot him, and at the preliminary examination, he testified that he never saw the shooter's face. Holmes admitted at trial that he lied at the preliminary examination because he feared being labeled a snitch. He claimed that he was now telling the truth for JJ's sake.

[2] Hicks did not testify at the preliminary examination. At trial, Hicks indicated that she was likely high on marijuana on the day of the shooting, that she could not recall defendant saying anything after the shooting, and that she may have made an inaccurate statement to the police because she was under the influence of marijuana. The trial court allowed the prosecution to introduce Hicks's statement to the police about defendant's incriminating response to being asked why he shot Holmes.

[3] At one point, defendant informed police that he did not know where the apartment complex was located, but, when confronted with information that he had previously resided at the complex, defendant conceded that he had actually stayed there a few times. One of defendant's assertions was that he was in Tennessee on the day of the crime, but evidence was presented that his cellphone was pinging in the Flint area that day.

Defendant initially was charged with and bound over on the offenses of AWIM and felony-firearm as to the shooting of Holmes, and second-degree child abuse, MCL 750.136b(3), and felony-firearm with respect to JJ. Before trial, defendant repeatedly raised his right to a speedy trial. The final time he did so was in September 2022, when it had been more than 18 months since his arrest. Defendant urged the trial court to dismiss the case because of the constitutional violation. The trial court denied the motions.

At the time trial was set to begin, the prosecution moved for leave to amend the felony information. The prosecution sought to drop the second-degree child abuse charge and to add a second AWIM charge in relation to JJ. The associated felony-firearm charge would also change accordingly. Defendant contended that the late amendment prejudiced his defense, violating his constitutional rights to due process and a fair trial. The trial court disagreed and permitted the amendment. Defendant was convicted after a four-day trial and sentenced as noted earlier.

While this appeal was pending, defendant moved the trial court for a new trial, a *Ginther*[4] hearing, or an order of acquittal of the AWIM and felony-firearm charges related to JJ. Defendant argued that the convictions concerning JJ were legally insufficient because the doctrine of transferred intent did not apply under the circumstances. Defendant also contended that trial counsel was ineffective in a number of instances, which required a *Ginther* hearing to establish a factual record. The trial court denied the motion. The case is now before us for plenary review.

## II. ANALYSIS

## A. SPEEDY TRIAL

Defendant first argues that the trial court erred when it denied his motions to dismiss on the basis of a speedy-trial violation. On de novo review, with respect to the four factors that must be examined and balanced when evaluating a speedy-trial claim, we conclude that the 21-month-long delay between defendant's arrest and the trial gave rise to a presumption of prejudice, that defendant timely asserted his speedy-trial rights, that the reason for the delay, the COVID-19 pandemic and related court closings, did not weigh against the prosecution, and that the presumption of prejudice was overcome where there simply was no identifiable prejudice because of the delay. See *People v Williams*, 475 Mich 245, 250, 261-262; 716 NW2d 208 (2006); *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 1.[5] The *Smith* panel ruled:

> The COVID-19 pandemic placed immeasurable, unexpected, and unprecedented stress on our court system. That stress included the suspension of jury trials, the resulting backlog of cases, and the inevitable delays in taking cases to trial. These delays affected everyone who makes up our justice system, but they

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[5] "Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a speedy trial." *People v Waclawski*, 286 Mich App 634, 665; 780 NW2d 321 (2009), citing US Const, Am VI; Const 1963, art 1, § 20; MCL 768.1; MCR 6.004(A).

uniquely affected criminal defendants, especially those incarcerated while awaiting trial. This case, like many others that our Court has confronted since the COVID-19 pandemic, involves a claimed violation of the constitutional right to a speedy trial. Defendant Quatrail Terell Smith was incarcerated for over two and a half years before a jury convicted him of three counts of first-degree murder, along with several firearm possession charges.

We hold that delays caused by the COVID-19 pandemic are not attributable to the prosecution when evaluating a speedy-trial claim. The government simply cannot be faulted for a highly contagious and mutating virus. While the length of the delay in this case creates a presumption of prejudice to Smith, nearly all the delay stemmed from emergency public-health measures taken to limit the spread of COVID-19, and the delay did not prejudice Smith's ability to defend against the charges. We therefore conclude that Smith's right to a speedy trial was not violated. [*Smith*, ___ Mich App at ___; slip op at 1.[6]]

In this case, defendant relies solely on the delay caused by the pandemic, and we note that the delay here was considerably shorter than that in *Smith*. The delay was not attributable to the prosecution as held in *Smith*. Moreover, although prejudice was presumed, the prosecution met its burden of showing that no injury occurred, and defendant has not identified any relevant basis to conclude that his ability to defend against the charges was prejudiced. See *Williams*, 475 Mich at 262. With respect to the issue of prejudice, we note there are two types of prejudice—prejudice to the defense and prejudice to the person. *People v Waclawski*, 286 Mich App 634, 668; 780 NW2d 321 (2009). "Prejudice to the defense is the more serious concern, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Williams*, 475 Mich at 264 (quotation marks and citations omitted). "Our Supreme Court has repeatedly recognized in the context of lengthy pretrial incarcerations that the most significant concern is whether the defendant's ability to defend himself or herself has been prejudiced." *Waclawski*, 286 Mich App at 668-669 (quotation marks and citation omitted). A generalized allegation of prejudice caused by a delay, such as the unspecified loss of evidence or fading of memories, is insufficient to establish that a defendant was denied his right to a speedy trial. *People v Gilmore*, 222 Mich App 442, 462; 564 NW2d 158 (1997). "[I]n determining prejudice to a defendant, we do not look at how the prosecutor's case was improved during the delay, but to whether the defendant's defense was degraded." *People v Holtzer*, 255 Mich App 478, 494; 660 NW2d 405 (2003).

Defendant claims prejudice on the basis of Hicks's testimony that due to heavy marijuana use, she lacked memory of overhearing defendant effectively inculpate himself when asked by another individual why he shot Holmes. Defendant contends that her memory certainly did not improve with the passage of time and that Hicks's lack of recall allowed the prosecution to introduce her statement to the police regarding the overheard conversation. We fail to see the logic in this argument. The fading of Hicks's memory was, if anything, beneficial to defendant and a

---

[6] We note that the analysis in *Smith* belies the prosecution's argument in the instant case that delays caused by the pandemic are not countable toward the 18-month-delay period after which prejudice is presumed. *Smith*, ___ Mich App at ___; slip op at 1; see also *Williams*, 475 Mich at 261-262.

detriment to the prosecution, as she was plainly backtracking from her statement to the police at the time of the shooting that was damaging to defendant. With respect to the introduction of Hicks's statement to the police, the substance of the event covered by the statement, i.e., defendant's inculpatory response to a question, was going to be heard by the jury one way or the other, either through Hicks's own testimony or the admission of the statement if disavowed. The 21-month delay between arrest and trial did not degrade the defense. In sum, on balancing the four speedy-trial factors, we hold that defendant's right to a speedy trial was not denied. Accordingly, we conclude that the trial court did not err by denying defendant's speedy-trial motions.

## B. AMENDMENT OF THE INFORMATION

Defendant next argues that the trial court abused its discretion and violated his constitutional rights by granting the prosecution's motion to amend the information by dropping the child-abuse charge and adding the AWIM charge on the brink of trial. Defendant contends that he was not provided fair notice of the second AWIM charge regarding JJ because it was added on the first day of trial and it was a completely different offense from the crime of child abuse. Defendant maintains that the amendment was prejudicial and negatively impacted his attorney's preparation and defense. We conclude that defendant's arguments do not merit reversal.

We hold that the trial court did not abuse its discretion or otherwise err by granting the motion to amend. See *People v Perry*, 317 Mich App 589, 594; 895 NW2d 216 (2016). This Court reviews de novo the constitutional question regarding defendant's right to adequate notice of the charges against him. *People v Darden*, 230 Mich App 597, 600; 585 NW2d 27 (1998). "A trial court may amend an information at any time before, during, or after a trial, as long as the amendment does not unfairly surprise or prejudice the defendant." *Perry*, 317 Mich App at 594. "The trial court may allow the prosecution to amend the complaint to include a new charge if amendment would not cause 'unacceptable prejudice to the defendant because of unfair surprise, inadequate notice, or insufficient opportunity to defend.' " *People v Carlton*, 313 Mich App 339, 353; 880 NW2d 803 (2015), quoting *People v Hunt*, 442 Mich 359, 364; 501 NW2d 151 (1993), and citing MCR 6.112(H). "A defendant may establish unfair surprise by articulating how additional time to prepare would have benefited the defense." *Perry*, 317 Mich App at 594. "The fact that the new charge might carry a more severe penalty is not a sufficient basis to conclude that [the defendant] would be unacceptably prejudiced." *Carlton*, 313 Mich App at 353. Instead, "the relevant inquiry is whether he would have a fair opportunity to meet the charges against him." *Id*.

Defendant has not shown how the amendment had an unacceptable prejudicial effect on him. Defendant's theory at trial was that he did not shoot anyone because he was not at the scene. He essentially presented an alibi defense. That defense would necessarily extend to the new charge that was addressing the very same set of factual circumstances. If defendant were not present at the shooting of Holmes, he would likewise not have been present for the shooting in relation to JJ's being a victim. Moreover, whether the shooting equated to child abuse or AWIM in connection with JJ would give rise to comparable defenses even if defendant admitted being present at the crime scene, e.g., claims that he did not discharge a weapon or claims that the requisite intent was lacking. The amendment had no bearing on defendant's preparation for trial

-5-

and his defense.[7]  We conclude that the trial court did not abuse its discretion or otherwise err by granting the prosecution's motion to amend the information.

## C.  MOTION FOR *GINTHER* HEARING

Defendant next argues that the trial court abused its discretion when it denied his postconviction motion for a *Ginther* hearing.  We disagree.

A trial court's decision whether to grant an evidentiary hearing, such as a *Ginther* hearing, is reviewed for an abuse of discretion.  *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008).  "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes."  *Id*. at 217.  In Michigan, a *Ginther* hearing is a method by which "[a] defendant who wishes to advance claims that depend on matters not of record can . . . seek at the trial court level an evidentiary hearing for the purpose of establishing his claims . . . ."  *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973).  A *Ginther* hearing is not warranted when the "defendant has not set forth any additional facts that would require development of a record to determine if defense counsel was ineffective . . . ."  *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007).[8]

---

[7] Defendant argues that he was unprepared to defend against a claim that defendant's intent to kill Holmes transferred to JJ.  Defendant, however, was abundantly aware that his intent to kill Holmes was an issue from the very beginning because he had always been charged with AWIM with respect to Holmes.  The doctrine of transferred intent merely states that the intent to kill one person can extend to an unintended victim.  See *People v Plummer*, 229 Mich App 293, 304 n 2; 581 NW2d 753 (1998) ("Under the doctrine of transferred intent, where A aims at B, intending to kill him, but misses and hits C, killing her, A is held guilty of the murder of C.").  Thus, practically speaking, any intent-based defense regarding the AWIM charge related to Holmes would carry over as a defense to the AWIM charge involving JJ.  And again, the defense presented in this case was that defendant was not present at the crime scene.  Defendant has not shown how he suffered any unacceptable prejudice on this basis.  *Carlton*, 313 Mich App at 353.

[8] In *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001), the Michigan Supreme Court recited the principles that generally govern a claim of ineffective assistance of counsel:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy [a] two-part test . . . . First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. Second, the defendant must show that the deficient performance prejudiced the defense. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A

Defendant asserts three instances in which trial counsel's representation may have been deficient and that necessitate expansion of the record through a *Ginther* hearing in order to fully establish the factual predicate for claims of deficient performance. He argues (1) that counsel's communications with defendant were lacking given that defendant was unable to review the cellphone records and the surveillance-camera footage from the apartment complex until the day of trial, that (2) counsel was unprepared at trial and failed to present a defense because he did not call alibi witnesses who were willing to testify, and that (3) counsel provided misinformation to defendant about plea offers. In support of these claims, defendant submitted an affidavit in the trial court. We conclude, however, that the affidavit was inadequate for purposes of justifying an evidentiary hearing. The same is true of defendant's brief on appeal, which provides little by way of elaboration.

First, with regard to counsel's alleged communication failures in not informing defendant before trial of the cellphone records and surveillance-camera footage, assuming such was the case, we find defendant makes no claim of prejudice, i.e., he does not argue that had he known of the evidence before trial, he would have mounted a different defense, changed his trial strategy, or submitted evidence to counter the phone records and video footage. Accordingly, an evidentiary or *Ginther* hearing would not result in a basis to find ineffective assistance of counsel that merited reversal.

Next, with respect to alibi witnesses, defendant did not provide any affidavit from a prospective alibi witness regarding the nature of any testimony that the witness would give. Furthermore, defendant has not even identified by name these purported witnesses in his own affidavit. Nor has defendant explained where these unnamed witnesses would have placed

---

reasonable probability is a probability sufficient to undermine confidence in the outcome. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [Quotation marks and citations omitted.]

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Traver (On Remand)*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019) (quotation marks and citation omitted). But "a court cannot insulate the review of counsel's performance by [simply] calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "Initially, a court must determine whether the strategic choices were made after less than complete investigation, and any choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. (quotation marks, citation, and brackets omitted).

defendant at the time of the shooting. Defendant's brief on appeal is just as sparse. Defendant failed and still fails to set forth facts that would require development of the record.

Finally, with respect to plea offers, defendant's affidavit is vague and confusing, and defendant's brief on appeal provides no elaboration. In his affidavit, defendant averred, in relevant part, as follows:

> [Counsel] kept liein [sic] about the plea deals that they talked about even if they talked about any he kept saying if [I] take a plea it would be probation and time se[rved] but never put it on paper.
>
> P.S. can you get in touch with [counsel] and get a statement on why they ain't let me take the plea on the day of trail [sic] he said he would testify to it if need it.

Trial counsel never submitted a statement or affidavit, and defendant's affidavit is too sparse and unclear to justify a *Ginther* hearing. We note further that any suggestion that a plea was offered involving time served or probation seems, at best, difficult to reconcile with the nature of the offenses at issue. Moreover, at the plea-cutoff hearing, defendant agreed that he wished to proceed to trial. And at that same hearing, defense counsel stated, "Judge, we've gone back and forth with offers and counteroffers. They have all been rejected." Defendant did not voice any disagreement and has offered nothing to substantiate the notion that counsel performed ineffectually in this regard; consequently, we conclude that an evidentiary hearing covering plea offers is unwarranted. In sum, we hold that the trial court did not abuse its discretion by denying defendant's request for a *Ginther* hearing.

## D. AWIM – SUFFICIENCY OF THE EVIDENCE

Defendant next argues that there was insufficient evidence to sustain his convictions of AWIM and felony-firearm as to JJ. In *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020), this Court articulated the well-established principles that govern our review of a sufficiency argument:

> This Court reviews de novo whether there was sufficient evidence to support a conviction. In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. Circumstantial evidence and any reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime. The prosecution need not negate every reasonable theory of innocence; it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. All conflicts in the evidence must be resolved in favor of the prosecution. [Quotation marks and citations omitted.]

Defendant contends that because the unintended victim, JJ, was not struck by gunfire or otherwise physically injured, and because there was no evidence that JJ was under a reasonable apprehension or fear of receiving a battery, there could be no transferred intent from Holmes to JJ, thereby requiring us to vacate the AWIM and felony-firearm convictions related to JJ.[9] Defendant argues that JJ was oblivious to what was occurring during the shooting. The crux or essence of defendant's argument is that absent a battery or an assault on JJ, the doctrine of transferred intent cannot be applied to hold defendant criminally liable for AWIM in regard to JJ. As we understand defendant's argument, he is not contending that defendant's intent to murder Holmes cannot theoretically be transferred to establish an intent to murder JJ; rather, defendant is claiming that JJ still needed to be the subject of a battery or an assault and that there was no evidence establishing that JJ was battered or assaulted. In other words, defendant, seemingly, is not challenging the "intent" element of AWIM in relation to JJ; he is challenging the "assault" element of the crime. And absent an assault, there was insufficient evidence to convict defendant of AWIM in connection with JJ even under the doctrine of transferred intent.[10]

"The elements of assault with intent to commit murder are '(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder.' " *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010), quoting *People v Brown*, 267 Mich App 141, 147-148; 703 NW2d 230 (2005).[11] "An assault may be established by showing either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). "The first type is referred to as an attempted-battery assault, whereas the second is referred to as an apprehension-type assault." *People v Nickens*, 470 Mich 622, 628; 685 NW2d 657 (2004) (quotation marks and citation omitted).

First, if defendant is actually challenging the intent element of AWIM in relation to JJ, we conclude that there was sufficient evidence for the jury to find that the element was established on either a transferred-intent theory—on which the jury was instructed[12]—or on a direct-intent theory, where defendant discharged a firearm into the vehicle, JJ was sitting directly behind Holmes, and where defendant may have wanted to eliminate any witnesses.[13] Next, to the extent that defendant

---

[9] Defendant also states in a footnote that there was no evidence that he attempted to commit a battery on JJ.

[10] Once again, "[u]nder the doctrine of transferred intent, where A aims at B, intending to kill him, but misses and hits C, killing her, A is held guilty of the murder of C." *People v Plummer*, 229 Mich App 293, 304 n 2; 581 NW2d 753 (1998).

[11] With respect to the AWIM instruction in this case, the trial court, consistently with M Crim JI 17.3, instructed the jury, in part, that the prosecution had to prove that defendant tried to physically injure another person and that when defendant committed that assault he had the ability to cause an injury, or at least believed that he had the ability.

[12] Defendant clearly had the intent to murder Holmes.

[13] In *Kenny*, 332 Mich App at 403, this Court explained:

argues that JJ had to actually be struck by gunfire in order to sustain the AWIM conviction on a transferred-intent theory, we note the cases defendant cites simply involved victims who were actually shot. They did not, however, indicate that the doctrine cannot be applied to an AWIM charge where no injury occurred. Moreover, as indicated above, the jury could have convicted defendant of AWIM in relation to JJ on a direct-intent theory. With respect to the assault element, in light of the evidence that JJ was sitting in the backseat right behind Holmes when the shooting took place, we find there was sufficient evidence to show that there was an attempted battery on JJ. Furthermore, given JJ's close proximity to Holmes, we conclude, taking into consideration reasonable inferences and viewing the evidence in a light most favorable to the prosecution, that there was sufficient evidence to demonstrate that JJ was in reasonable apprehension of an immediate battery. We believe that even a four-year-old could have reasonably apprehended the danger of being hit, and defendant's claim that JJ was oblivious to the shooting is groundless. In sum, we hold that there was sufficient evidence to support the convictions of AWIM and felony-firearm in relation to JJ.

### E. DEFENDANT'S STANDARD 4 BRIEF

In a Standard 4 brief on appeal, defendant contends that he is entitled to a new trial either because (1) the trial court erroneously allowed inappropriate questioning; (2) the trial court abused its discretion by admitting irrelevant and unfairly prejudicial evidence; (3) the prosecutor committed misconduct by violating defendant's right to a fair trial; or (4) trial counsel was ineffective for failing to object to the various errors. None of these issues were preserved; therefore, our review of the claimed trial court errors and prosecutorial misconduct is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

It is important to note that several of defendant's arguments relate to events that occurred during the preliminary examination. Specifically, defendant argues that the prosecutor committed misconduct by leading a witness and eliciting inadmissible character evidence. These arguments are moot because alleged errors during a preliminary examination are irrelevant so long as defendant is ultimately convicted after a fair trial. *People v Matuszak*, 263 Mich App 42, 50-51; 687 NW2d 342 (2004). As discussed above, defendant has not identified any errors at his trial warranting reversal, so the claimed errors at the preliminary examination have been rendered moot. *Id*. Indeed, the primary concerns with the issues identified by defendant, leading questions and improper character evidence, are only concerning if they are presented to a jury. Thus, defendant cannot possibly show how these alleged errors prejudiced him when they were not heard by the jury. Consequently, because the alleged errors at the preliminary examination are both moot and lack merit, we decline to consider them further. *Id.*

---

The element of intent may be inferred from circumstantial evidence. Because it can be difficult to prove a defendant's state of mind on issues such as intent, minimal circumstantial evidence suffices to establish a defendant's state of mind. A defendant's intent can be gleaned or inferred from his or her actions. [Citations omitted.]

Defendant next argues that the prosecutor committed misconduct by knowingly eliciting false testimony from witnesses. We reject this argument. Although defendant cites a couple of pages of transcript, each of which contains a simple hearsay objection, he fails to specifically identify the allegedly false or perjured testimony on those pages and fails to explain why he believes that any of the testimony was false or perjured. Moreover, on examination of the testimony found on the cited transcript pages, we find that there is nothing in the record even remotely supporting defendant's assertion that the testimony was the product of an attempt by the prosecutor to knowingly elicit false testimony. Defendant has wholly failed to meet his burden of demonstrating that the challenged testimony was actually false. See *People v Bass*, 317 Mich App 241, 274; 893 NW2d 140 (2016). We also reject defendant's associated argument that trial counsel was ineffective for failing to object to the prosecutor's purported knowing elicitation of false and perjured testimony. Trial "counsel is not ineffective for failing to advance a meritless or frivolous argument." *People v Leffew*, 508 Mich 625, 638; 975 NW2d 896 (2022).

Next, defendant appears to raise an evidentiary claim. Specifically, he seems to suggest that Hicks's testimony was irrelevant and inadmissible under MRE 401 and 402, or excludable given its unfair prejudice under MRE 403. Defendant claims such is true because Hicks admitted to having a poor memory due to her marijuana use. In other words, defendant seemingly argues that all of Hicks's testimony should have been excluded because of her admittedly poor memory. He fails to cite any supporting caselaw. Defendant's argument effectively concerns the *credibility* of Hicks's testimony, not the *admissibility* of the testimony. Because it constituted eyewitness testimony to what occurred at the shooting scene immediately before and after the shooting given by a person who personally knew and could identify defendant, Hicks's testimony was highly relevant to the issues that the jury needed to resolve, MRE 401 and 402, and its probative value was not substantially outweighed by the danger of unfair prejudice, MRE 403. It was the role of the jury to assess her credibility, not the role of the judge to exclude the testimony. We conclude that there was no error by the court, plain or otherwise, by admitting Hicks's testimony. *Carines*, 460 Mich at 763-764. We also reject defendant's associated argument that trial counsel was ineffective for failing to object to the admission of Hicks's testimony. Trial "counsel is not ineffective for failing to advance a meritless or frivolous argument." *Leffew*, 508 Mich at 638.[14]

## III. CONCLUSION

We hold that defendant's right to a speedy trial was not violated, that the trial court did not err by allowing amendment of the information, that the court did not err by denying defendant's request for a *Ginther* hearing, that there was sufficient evidence to support the AWIM and felony-

---

[14] Defendant's Standard 4 brief is relatively difficult to understand. We have addressed all of the arguments by defendant as best we can discern. To the extent defendant has attempted to raise other arguments, we deem them abandoned for lack of sufficient briefing and decline to consider them. See *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006) (quotation marks and citation omitted).

firearm convictions related to JJ, and that none of defendant's arguments in his Standard 4 brief merit reversal.

We affirm.

/s/ Jane E. Markey
/s/ Brock A. Swartzle
/s/ Philip P. Mariani